NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TRUCK DRIVERS, CHAUFFEURS
AND HELPERS LOCAL UNION NO.
100, an affiliate of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Respondents.

No. 75–1194.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1975.

Decided Dec. 11, 1975.

Elliott Moore, Deputy Associate Gen.
Counsel, N. L. R. B., Alan Banov, Washington, D. C., Emil C. Farkas, Director,
Region 9, N. L. R. B., Cincinnati, Ohio,
for petitioner.

Jonas B. Katz, Gettler & Katz, Cincinnati, Ohio, for respondents.

Before PHILLIPS, Chief Judge,
McCREE, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This case is before the Court upon the
application of the National Labor Relations Board pursuant to Section 10(e) of
the National Labor Relations Act, as
amended (61 Stat. 136, 73 Stat. 519, 29
U.S.C. Section 151 *et seq.*) for enforcement of its order against the Truckdrivers, Chauffeurs and Helpers Local Union No. 100, an Affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of
America (herein "the Union"). The
Board's decision and order are reported
at 214 NLRB No. 151.

Moraine Materials Company, the employer in this labor relations case, commenced the operation of a ready-mix
concrete plant in August 1970 on a 5-acre plot of ground in Sharonville, Ohio.
Sharonville is a part of Cincinnati and
located some 12 miles from downtown
Cincinnati. Except for the plant and
limited adjacent paved areas and driveways, most of the 5-acre plot was undeveloped grassland. In inclement weather this grassland became unsuitable for
parking Company equipment and customer parking.

As a consequence, from the beginning
of its operation the Company would, at
various times, divert 1 or more of its 16
truckdrivers from their regular job of
delivering ready-mix cement to construction sites, to the pouring and finishing of

concrete on the largely underdeveloped portion of its 5-acre yard. For the foregoing work, the Company selected truckdrivers who had experience in such work.

Thereafter the Respondent Union protested to the Company against such laying of cement in the yard, as being out of their "classification" as drivers under its collective bargaining agreement with the Moraine Company; and the Union directed its member-drivers not to accept any work assignments other than truckdriving and the cleaning of their mobile equipment.

The Company, however, claimed the right to use its truckdrivers for such cement work on its own premises under the terms of the collective-bargaining agreement, and filed its complaint in this case on that premise.

The key provision controlling this case, according to the decision of the Administrative Judge, is that part of the collective-bargaining agreement which reads:

"No drivers or helpers shall receive less than the minimum wage rate provided for them herein regardless of the type of work they are actually required to perform. *Any work any employee is required to do, other than his regularly assigned duties, shall be within reason.* [Emphasis supplied.]"

The Company's calls for concrete delivery were not always made in advance, and the Company, therefore, could not fix with certainty the number of drivers it would need on any given day. Nonetheless, the Company had to call in drivers in anticipation of sudden calls for concrete, and pay those drivers even though no delivery work materialized for them to perform. Because the delivery work did not fully occupy the time of drivers on duty, the Company from the opening of its plant also assigned them such miscellaneous tasks as cutting grass, clearing the plant's roof of concrete, and preparing a concrete surface on the Company's premises to facilitate parking and moving trucks.

The Company also employs two yardmen, who are assigned to loading concrete into trucks for delivery, and feeding raw materials into the plant. Because the yardmen are fully occupied by their primary duties, and even work overtime, they are not assigned to miscellaneous chores, as are the drivers. The Company's two mechanics repair the trucks.

Shortly after opening the new plant, the Company entered into three collective bargaining agreements, each covering a separate unit of employees—a driver's unit, a yardman's unit and a mechanic's unit.

After the Union protested to the Company against the laying of cement in the yard by the drivers as being out of their classification as drivers under the collective bargaining agreement, a meeting with the Union was arranged by the Employer in February 1975, but failed to resolve the disagreement over whether the collective bargaining agreement did or did not permit the Employer to use drivers to pour concrete at the Employer's plant site; and, at the conclusion of the meeting, the Union Business Agent instructed the Union Steward to notify the drivers not to engage in any work other than driving and cleaning their trucks.

The General Counsel and the Employer contend that the collective-bargaining agreement with the drivers gives the Employer the right to use its drivers to perform the concrete work at its plant site. Respondent Union disagrees and contends that paving work at the plant is covered by the yardman contract.

The dispute came before the Administrative Law Judge, who found it was clear and undisputed that Respondent Union prohibited the Employer's drivers from accepting any work assignments other than driving and related work and, by its ban, stopped the Employer's drivers from engaging in the work of paving the Employer's parking lot; and accordingly the Administrative Judge entered a decision dismissing the Employer's complaint.

Thereafter, the General Counsel and the Employer filed exceptions to the de-

cision of the Administrative Judge, and the case came on for hearing before the National Labor Relations Board.

The Board, in its Decision and Order, stated:

"We find no support in the literal language of the drivers' agreement for the Respondent Union's position that drivers are not permitted to do any work other than driving or cleaning trucks. Nor do we find evidence in the record to show that such a restriction was expressly agreed to in prior negotiations or in negotiations leading to the current agreement. Consequently, we must look to the agreement itself in order to resolve the allegations of the complaint.

"We agree with the Administrative Law Judge that the question of whether Respondent Union's conduct constituted a unilateral alteration of the collective-bargaining agreement turns on the interpretation of the following provision of this agreement:

"No drivers or helpers shall receive less than the minimum wage provided for them herein regardless of the type of work which they are actually required to perform. *Any work an employee is required to do, other than his regularly assigned duties, shall be within reason.* [Emphasis supplied.]"

The National Labor Relations Board held that the Administrative Law Judge interpreted the term "within reason" in the provision to mean that drivers may not under the agreement be assigned any work wholly unrelated to their duties as truckdrivers and that the pouring of concrete is not, under the circumstances, work which is related to the truck-driving function and classification. The Board observed that the Administrative Judge, in arriving at his interpretation, relied upon record evidence which, he found, shows that the tradition, custom, and practice, with the ready-mixed concrete industry, is that truckdrivers may not be used by their employers for any work other than driving trucks and

related work such as cleaning trucks. The Board stated that it was unable "to accept the unduly restrictive interpretation of the disputed provision" by the Administrative Judge.

Moreover, the Board held, regarding such interpretation:

"Under his interpretation any work performed by the drivers above and beyond the driving and cleaning of their vehicles would be work wholly unrelated to their duties as truckdrivers. The effect of this interpretation is to read 'within reason' out of the provision. If the parties had intended to so limit assignments to the drivers, there would have been no need to include 'within reason' in the provision, because obviously driving and cleaning functions fall within the category of 'regular assigned duties.' Moreover, we find, contrary to the Administrative Law Judge, that neither the testimony of Union Agent Tucker nor the record as a whole provides a sufficient basis for finding that the work assigned by the Employer herein conflicts with custom and practice in the ready-mixed concrete industry."

The Board observed that the only reasonable interpretation of the provision on its face is that drivers may be called upon to work at jobs other than driving and cleaning their trucks, and that this interpretation was further bolstered by the article in the agreement describing particular circumstances in which the drivers are to be assigned to "any other work."

The Board found that Respondent Union's ban of work assignments to the Employer's truckdrivers other than driving and cleaning their trucks constituted a unilateral alteration of its collective bargaining agreement with the Employer in violation of Section 8(b)(3) of the Act, and issued its order, with the usual cease and desist provisions, and the requirements of posting at its business office notices cancelling the ban issued against the acceptance by the Employer's drivers of assignment other than driving trucks, and the similar provisions

applicable in such cases without first affording the Employer a timely opportunity to bargain within the meaning of Section 8(d) of the Act.

Upon due consideration of the case and for the reasons stated by the Board, it is the conclusion of this Court that the order of the National Labor Relations Board for enforcement be, and is hereby granted.